IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| SILVIA COTRISS,<br><br>Plaintiff,<br><br>vs.<br><br>CITY OF ROSWELL, the ROSWELL CHIEF OF POLICE, JAMES RUSSELL GRANT, Individually and in his Official Capacity, and the ROSWELL CITY ADMINISTRATOR, KATHERINE GAINES LOVE, Individually and in her Official Capacity,<br><br>Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | <br><br><br><br>CIVIL ACTION NO. __ |

**PLAINTIFF'S ORIGINAL COMPLAINT**

COMES NOW SILVIA COTRISS ("Plaintiff"), Plaintiff herein, who makes and files this, her Original Complaint complaining of and about the CITY OF ROSWELL, the ROSWELL CHIEF OF POLICE, JAMES RUSSELL GRANT, Individually and in his Official Capacity, and the ROSWELL CITY MANAGER, KATHERINE GAINES LOVE, Individually and in her Official Capacity (collectively, "Defendants"), Defendants herein, and in support thereof respectfully show the following:

**I.**
**Parties**

1. Plaintiff Silvia Cotriss is an individual residing in Woodstock, Georgia.

2. Defendant CITY OF ROSWELL is municipality located in Georgia. The CITY OF ROSWELL may be served with process by serving City Administrator Katherine Gaines Wood at her office located at Roswell City Hall, 38 Hill Street, Roswell, GA 30075.

3. Defendant JAMES RUSSELL GRANT, is the Roswell Chief of the Roswell Police Department Police (the "Chief"). He may be served with process by serving him at his office located at the Roswell Police Department, 39 Hill Street, Roswell, GA 30075.

4. Defendant KATHERINE GAINES GRANT is the City Administrator of Roswell, Georgia (the "City Administrator"). She may be served with process by serving her at Roswell City Hall, 38 Hill Street, Roswell, GA 39975.

**II.**
**Venue, Jurisdiction and Conditions Precedent**

5. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, Plaintiff asserts claims against the Defendants under 42 U.S.C. § 1983, and therefore they arise under federal law.

6. Venue is proper in the Court pursuant to 28 U.S.C. § 1391(b) because the events giving rise to these claims all occurred in the Northern District of Georgia and because the Defendants reside within, and are located within, the Northern District of Georgia.

7. The Plaintiff affirmatively avers that all condition precedents to filing this suit have taken place, or else have been waived.

**III.**
**Statement of Facts/Actionable Conduct**

8. Plaintiff was employed with the Roswell Police Department ("RPD") for approximately 20 years. Her assignment prior to termination was as a Sergeant in the Uniform Patrol Division.

9. On July 11, 2016, a complaint was allegedly made through an email to the Chief, about a Confederate flag that was being displayed on a flagpole outside a private residence located at 1275 West Wylie Bridge Road. The complainant was emailing the Chief because he believed a RPD officer lived at the residence due to a RPD police vehicle bring parked in the driveway of the residence. The complainant alleged that he felt due to the current race, police, and human relations issues, the officer should not be allowed to display such a flag despite her individual right to free speech.

10. Plaintiff resides at 1275 West Wylie Bridge Road, Woodstock, GA. She owns the home and has resided there for over 11 years. Prior to March 2016, she parked a RPD police vehicle in her driveway visible to anyone walking or driving by her residence. In March 2016, she went on leave from her job under the Family Medical Leave Act and kept her RPD police vehicle during that time. In May 2016, a Roswell Police Officer came to her residence and asked for the return of her RPD police vehicle because the radios in all the police vehicles were being replaced. Plaintiff released the vehicle to the officer, and the RPD police vehicle was never returned to her. Thus, a RPD police vehicle could not have been parked in her driveway on or about July 11, 2016 when the alleged complaint was made.

11. Plaintiff admits she had a confederate flag flying below an American flag on a flagpole in the front yard of her private residence. Her house mate raised the Confederate

flag complained of approximately three-to-four weeks prior to the July 11, 2016 complaint. Her house mate went out to remove a flag that had a motorcycle in the middle of it and a smaller version of the Confederate flag which had been displayed on the flagpole since April 2015, but while he was outside, a neighbor gave him a new Confederate flag to raise. Her house mate then removed the motorcycle Confederate flag and replaced it with the Confederate flag.

12. An investigation immediately ensued after the alleged complaint on July 11, 2016 based on allegations of conduct unbecoming a police officer under Section 13.1 of the RPD Policies and Procedures Manual. Plaintiff was interviewed by the RPD on July 12, 2016 regarding the display of the Confederate flag.

13. Plaintiff had purchased the motorcycle Confederate flag with her late husband in Florida approximately a year before. Her husband had passed away just a few months prior to the alleged complaint on May 11, 2016. Plaintiff gave her house mate permission to raise the new Confederate flag as a way to honor her Southern heritage and her late husband. Defendants asked Plaintiff why she displayed the Confederate flag and she explained it was a part of her heritage.

14. At the conclusion of the RPD investigation, the alleged violation was sustained. Plaintiff was never asked to remove the Confederate flag nor did anyone explain to her the concerns raised in the July 11, 2016 email. On July 12, 2016, Plaintiff was placed on Administrative Leave with Pay. On July 14, 2016, Plaintiff was formally terminated based on RPD Policy 16.5(A) “Duty Regarding Conduct: On/Off Duty an Officer must conduct

themselves as to merit the confidence and respect of the public and fellow officers"; Policy 16.82 "Conduct Unbecoming: On/Off Duty engaging in conduct which adversely affects the efficiency of the RPD and has tendency to destroy public respect for the employee or RPD or destroys confidence in the operation of the City service is conduct unbecoming and is prohibited"; and Section 13.19 Human Resources Policy: "any conduct on or off duty that reflects unfavorably on the City as an employer."

## IV.
## Causes of Action

16. Cause of Action: Violation of Constitutional Rights — Section 1983: The facts set forth above state a cause of action in favor of Plaintiff and against the Defendants, individually and in their official capacity, for a violation of the United States Constitution actionable under to 42 U.S.C. § 1983. Specifically, the Defendants' acts, done under color of law, deprived Plaintiff of rights, privileges or immunities secured by the federal Constitution and laws.

17. Violation of First Amendment Right to Free Speech: Plaintiff was wrongfully terminated by Defendants in violation of her First Amendment right to free speech. Plaintiff's display of the Confederate flag at her private residence was constitutionally protected speech and that speech was a substantial or motivating factor in the RPD's decision to terminate her. Her display of the Confederate flag at her private residence involved a matter of public concern. Plaintiff's speech did not relate to her job nor was it made in furtherance of her job duties as an officer. The speech is a matter of public concern in that it relates to matters of political, social, or other concern to the community. A Confederate flag

can communicate an array of messages, among them various political and historic points of view. Indeed, the Confederate flag has been a state sponsored symbol of Georgia heritage and generally accepted symbol of Georgia heritage. Examples of this include, but are not limited to the following facts:

A. The Flag of the State of Georgia from 1956 - 2001 is a Confederate flag variant adopted by the Georgia legislature to celebrate the Civil War Centennial.

B, The Georgia State flag of 2001- 2003 also contained a Confederate Battle flag.

C. The current flag of the State of Georgia, adopted in 2003, is also a Confederate flag variant, based on the First National flag of the Confederate States of America popularly known as the "Stars & Bars."

18. Plaintiff's interest in conveying her message of pride in her heritage and the historic significance of the Confederate flag outweighed any legitimate interest of the City in efficient public service. Finally, Plaintiff's speech played a substantial part in the City's decision to terminate her.

19. The City and the other Defendants in their official capacity are liable under Section 1983 for violating Plaintiff's First Amendment constitutional right to free speech through an official policy, custom, or pattern.

20. The City adopted the Chief's decision that displaying the Confederate flag at a private residence constituted a violation of RPD Policy 16.5(A) “Duty Regarding Conduct: On/off duty an officer must conduct themselves as to merit the confidence and respect of the public and fellow officers”; Policy 16.82 “Conduct Unbecoming: On/off duty officer engaging in conduct which adversely affects the efficiency of the RPD and has tendency to destroy public respect for the employee or RPD or destroys confidence in the operation of a City service is

conduct unbecoming and is prohibited"; and Section 13.19 Human Resources Policy: "any conduct on or off duty that reflects unfavorably on the City as an employer." The Police Chief is a person who has final policy making authority with the City of Roswell and has the authority to terminate employees. The City, through the City Administrator, who possesses final policy making authority for the City, adopted the Chief's decision to fire Plaintiff for her expressive speech without any lesser discipline considered.

21. Plaintiff's speech was made at her private residence and did not in any way impair or reflect on the City or the RPD. The speech did not impede the City or RPD's ability to perform its duties efficiently. In fact, a Confederate flag had been flying for over a year at Plaintiff's residence without causing any problems. The display of the Confederate flag was at her private residence and was made as a private citizen. She was displaying her pride in her Southern heritage and honoring her recently deceased husband.

22. The only connection that could be made to the City or RPD was through the RPD police vehicle that was parked at her residence months prior to the alleged complaint. She was not parking her vehicle at her residence at the time of the alleged complaint. Plaintiff's speech had no effect on the internal operation of the City or RPD.

23. The Chief and the City Manager are also liable in their individual capacities for their violation of Plaintiff's First Amendment right to free speech by taking part in terminating her for her display of the Confederate flag at her private residence.

24. The Chief and the City Manager are not entitled to qualified immunity for their conduct because they violated a clearly established constitutional right, Plaintiff's First

Amendment right to freedom of speech, and their conduct was objectionably unreasonable in light of clearly established law at the time of the incident.

25. As a direct and proximate cause of the Defendants' above described unlawful actions Plaintiff has suffered damages in the form of lost wages and benefits of employment and has suffered severe emotional distress and pain and suffering. Furthermore, the actions taken by the individual defendants sued in their individual capacities were willful, wanton and intentionally taken to harm the Plaintiff, thereby entitling the Plaintiff to an award of punitive damages against the individual Defendants sued in their individual capacities.

## V.
## Attorney's Fees

25. Plaintiff seeks her attorney's fees and costs pursuant to 42 U.S.C. § 1988 which authorizes an award of attorney's fees to prevailing parties in civil rights litigation.

## VI.
## Damages

WHEREFORE, PREMISES CONSIDERED, Plaintiff hereby prays the Defendants be cited to appear and answer herein and upon final hearing, Plaintiff have judgment against these Defendants for reinstatement to her position with all corresponding pay and benefits (or, in the alternative, an award of 10 years of front pay and cost of benefits), back pay, actual and compensatory damages, punitive damages against the individual Defendants sued in their individual capacities, reasonable and necessary attorney's fees and court costs incurred as a result of this suit, as well as prejudgment and post-judgment interest. Plaintiff further prays for such other and further relief at law or in equity to which the Court deems just and proper.

Respectfully submitted,

**__/S/ David Ates________**
**David Ates**
**Georgia Bar No. 026281**

**David Ates P.C.**
**5101 Forrest Walk**
**Roswell, GA 30075**
**(404) 382-5324 (Office)**
**(404) 931-5725 (Cell)**
**Ates_david@live.com**

ATTORNEYS FOR PLAINTIFF